IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

BARBARA HOPE, individually and
as next friend for H.H., a minor,

    Plaintiff,

v.                                                             No. 14-1126

DEANNA MULLINS,
SHILANA GANT and
TENNESSEE DEPARTMENT OF
CHILDREN'S SERVICES,

    Defendants.
_____

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
_____

*INTRODUCTION*

       This matter was brought by the Plaintiff, Barbara Hope, individually and as next friend for H.H., a minor, on May 30, 2014 against Deanna Mullins, Shilana Gant and the Tennessee Department of Children's Services ("DCS"), alleging violations of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, conspiracy under 42 U.S.C. § 1985 and violation of the principle of the Brian A. Settlement Agreement. Plaintiff also asserted state law claims including false imprisonment and false arrest. The Defendants have moved for dismissal of the complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure. (D.E. 10.) In response to the motion, Hope conceded that some of her claims are without merit, including those against the individual Defendants in their official capacities, claims against Defendant DCS, and claims brought under § 1985. She also stipulated to the dismissal of her allegation

with respect to the Brian A. Settlement Agreement. Accordingly, those claims are hereby DISMISSED. Before the Court is the remainder of the Defendants'[1] motion.

*STANDARD OF REVIEW*

Rule 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). Under the Rule, the court must "accept non-conclusory allegations of fact in the complaint as true[.]" *Ohnemus v. Thompson*, ___ F. App'x ___, 2014 WL 6844631, at *2 (6th Cir. Dec. 5, 2014). "To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014) (internal quotation marks & alterations omitted), *pet. for cert. filed,* 83 U.S.L.W. 3314 (U.S. Nov. 11, 2014) (No. 14-547). "Ultimately, the defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *Crugher v. Prelesnik*, 761 F.3d 610, 614 (6th Cir. 2014) (internal quotation marks omitted), *pet. for cert. filed*, 83 U.S.L.W. 3315 (U.S. Oct. 21, 2014) (No. 14-569).

> When a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein.

*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

*FACTS ALLEGED*

The following facts have been alleged by the Plaintiff. H.H. was removed from the custody of Hope, her mother, by DCS on October 10, 2012. Mullins is a DCS agent and Gant is

---

[1] At this point in the litigation, the capitalized term "Defendants" applies only to Mullins and Gant.

her supervisor.  After H.H.'s removal, Hope, a resident of Florida, moved for a ninety-day trial home placement, which was granted by the Henderson County, Tennessee Juvenile Court and began in late March 2013.  On May 22, 2013, after approximately sixty days of the trial placement had passed, Plaintiff moved for termination of the remainder of the period so that she could return with the child to Florida, where her family and support network were located.  Although the court did not terminate the trial home placement, it did grant an "extended vacation" to Florida, with the purpose of permitting the placement to expire there without the necessity of returning to Tennessee so long as the home was verified as safe and appropriate for H.H.  All parties were aware of the court's order.

DCS instructed Hope to provide potential addresses in Florida where she would be residing and to remain in contact with her attorney, H.H.'s guardian *ad litem* and the court-appointed special advocate ("CASA").  The court further directed her to comply with any home study arranged by the CASA, as long as the special advocate had an agency in the area.  Immediately after the hearing concluded, Hope provided DCS with the addresses of several family members, as the home in which she planned to permanently reside was under repair.  Mullins opposed the return to Florida and stated to Hope as she left the courtroom, "This isn't over."

When she arrived in Florida, Plaintiff kept in daily contact with the CASA, her counsel and the guardian *ad litem*.  She also attempted to get a home study, but discovered that the state had no local CASA agency and that no state agency would perform a formal home study absent an open Florida case of dependency and neglect.  Her efforts, and the results thereof, were reported to all interested parties.  Nonetheless, Hope began receiving frequent and harassing telephone calls and text messages from Mullins.

Upon Mullins' request, Plaintiff contacted Tina Harkness, a protective investigator with the Florida counterpart to DCS, the Florida Department of Children and Families ("FDCF"). Mullins spoke with Harkness on several occasions thereafter, including on June 7, 2013, at which time she was informed that H.H. was in a safe and adequate home, which Harkness had inspected, and was being properly cared for. Despite the positive report, Mullins attempted to have FDCF remove the child and/or aid DCS in doing so. Harkness, after consulting with her agency's legal counsel, refused to participate or endorse any removal plan as there was no legal or factual basis for such an action. When informed directly by FDCF legal counsel that no agency employee could participate in any removal of H.H. from Plaintiff's home, Mullins hung up on him.

At that point, Mullins' communications with Hope became more threatening, leading Plaintiff to report them to her attorney. Her counsel then made numerous attempts to contact DCS general counsel, Lee Ann Rial, but received no response.

DCS, based on false statements by Mullins, proceeded to obtain an *ex parte* attachment of the child, which stated, in pertinent part, that she was "dependent and neglected within the meaning of Tennessee law and that the . . . child is in the immediate need of the [juvenile c]ourt's protection, and it further appearing that the issuance of a summons in this case would be ineffectual." (D.E. 1 ¶ 40.) On June 10, 2013, a motion for review was filed with the Henderson County Juvenile Court and signed by Rial on behalf of DCS. The Defendants, particularly Mullins, knew no facts existed to justify an emergency removal of H.H. Nonetheless, Mullins proceeded to misrepresent the facts to Rial and the juvenile court, inducing the court to issue the attachment.

The sole allegation in the motion was that Hope was residing at one address, 12 Waterbury Circle in Ormond Beach, Florida, rather than another, 69 Carol Road in the same city, even though both had been provided to DCS at the prior court hearing. Based on misrepresentations by DCS agents, the juvenile court was led to believe that H.H.'s residence at the Waterbury Circle address placed her in immediate need of the court's protection and rendered her dependent and neglected, even though Hope's attorney, the guardian *ad litem* and the CASA knew Plaintiff was residing on Waterbury Circle until repairs were completed at the Carol Road address. Mullins also concealed that FDCF had been in contact with Hope, had expressly approved the Waterbury Circle home as suitable and had conveyed that information to DCS and Mullins. Defendants misled Rial and the juvenile court regarding H.H.'s residency, inducing the court to enter the order of attachment when it would not have done so otherwise. Neither Hope's counsel nor the guardian *ad litem* were served with copies of the motion for review or attachment.[2]

Based on the attachment, DCS sent Mullins and Gant to Florida. Because the local agency refused to participate, Gant phoned Hope and ordered her to bring the child to the local FDCF office for a "spot check." H.H. was immediately taken from her mother upon their arrival and flown back to Tennessee, where she was placed in a foster home. Five days later, upon hearing proof from Harkness, the juvenile court returned the child to Hope's full legal and physical custody.

---

[2] The motion for review and the order of attachment, both of which are public records, will be considered by the Court on the instant motion without converting the motion into one brought under Rule 56. *See Bassett*, 528 F.3d at 430. The Plaintiff has voiced no objection to its consideration without conversion to a summary judgment motion.

*PARTIES' ASSERTIONS AND ANALYSIS*

Federal Claims.

Section 1983 Generally.

Section 1983 provides a cause of action against any person who subjects "any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights [or] privileges secured by the Constitution and laws[.]" 42 U.S.C. § 1983. A plaintiff bringing suit under the statute must demonstrate that "[s]he was denied a constitutional right, and that the deprivation was caused by a defendant acting under color of state law." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).[3]

Immunity under § 1983.

An individual defendant may be immune from suit under § 1983 under certain circumstances. *See Alkire v. Irving*, 330 F.3d 802, 810-11 (6th Cir. 2003). In this case, Mullins and Gant assert that they are entitled to three types of immunity: qualified immunity, quasi-judicial immunity and quasi-prosecutorial immunity.

    1.    Quasi-Prosecutorial Immunity and the Defendant's Motion for Review.

Defendants contend that their conduct in submitting a motion for review in the juvenile court to obtain attachment of H.H. is protected by quasi-prosecutorial immunity, which "applies to conduct intimately associated with the judicial phase of the criminal process." *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 724 (6th Cir. 2011) (internal quotation marks omitted). The Sixth Circuit recognized that "social workers are absolutely immune only when they are acting in their capacity as *legal advocates* – initiating court actions

---

[3]The Plaintiff stipulated in her response to the instant motion that the alleged threats made by Mullins and/or Gant are not intended to be analyzed as freestanding claims under § 1983.

or testifying under oath – not when they are performing administrative, investigative, or other functions." *Id.* (quoting *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000)); *see also Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.,* 724 F.3d 687, 694 (6th Cir. 2013), *cert. denied sub nom. Campbell-Ponstingle v. Kovacic*, 134 S. Ct. 2696 (2014). "[A]bsolute immunity based on a prosecutorial function covers interactions with a court, such as testimony or recommendations given in court concerning the child's best interests as [the defendant] saw the matter." *Kovacic*, 724 F.3d at 694 (internal quotation marks omitted). It also includes preparing an order for entry by the court, *id.,* and acting in an advisory role to the juvenile court in recommending whether a child is ready to return home from state custody, *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 422-23 (6th Cir. 2001). When immunity applies, "the defense of absolute immunity provides a shield from liability for acts performed erroneously, even if alleged to have been done maliciously or corruptly." *Kovacic*, 724 F.3d at 694 (quoting *Dean v. Byerley*, 354 F.3d 540, 554 (6th Cir. 2004)). Thus, whether the Defendants are entitled to absolute immunity depends on whether their actions were taken in their capacities as legal advocates. *See Pittman*, 640 F.3d at 724; *Holloway*, 220 F.3d at 775. A defendant seeking absolute immunity bears the burden of showing that it is justified for the function at issue. *Adams v. Hanson*, 656 F.3d 397, 401 (6th Cir. 2011).

In *Pittman*, the district court concluded that a social worker was not entitled to absolute immunity for "regularly, repeatedly and on an ongoing basis misrepresenting [a parent's] status, his whereabouts and his attitude toward parenting . . . in . . . filings to the [j]uvenile [c]ourt." *Pittman*, 640 F.3d at 723-24. The Sixth Circuit disagreed. *Id.* at 724. The fact that the social worker made intentional misrepresentations to the juvenile court did not affect the appellate court's finding that she was in fact entitled to the shield of absolute immunity. *Id.* at 725. The

7

court rejected the district court's determination that "making misrepresentations . . . to the juvenile court . . . is conduct that would not constitute advocacy" as being at odds with the courts' functional approach to prosecutorial immunity. *Id.* In *Cady v. Arenac County*, 574 F.3d 334 (6th Cir. 2009), the court explained this approach by articulating that, "so long as the general nature of the action in question is part of the normal duties of a prosecutor," absolute immunity bars a § 1983 action even when his conduct was "unquestionably illegal or improper." *Cady*, 574 F.3d at 340. The *Pittman* court further stated that

> [b]ecause absolute immunity for social workers is akin to absolute immunity for prosecutors, the same protection must apply here, no matter how undesirable the results. In the words of Chief Judge Learned Hand, absolute immunity represents a balance between evils; [i]t has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

*Pittman*, 640 F.3d at 726 (internal quotation marks omitted).

Plaintiff asserts that prosecutorial immunity cannot protect the Defendants because Rial, not Mullins or Gant, signed the pleadings before the juvenile court. Thus, the argument goes, only Rial could be absolutely immune from suit. However, they have cited to no caselaw suggesting that this technicality in itself eliminates immunity. Indeed, in *Pittman*, the court found that the social worker responsible for misrepresentations contained in the complaint filed with the juvenile court was entitled to immunity even though it was the social worker's supervisor who was the named complainant in the filing. *Id.* at 724.

The acts of the Defendants in obtaining the attachment, including the information provided concerning the location of the child, in the Court's view, fall under the umbrella of legal advocacy. *See Kovacic*, 724 F.3d at 694. Hope's allegation that Mullins' representations proffered to the juvenile court in support of the *ex parte* order were false, misleading or made

8

with an improper motive does not alter the Court's conclusion. *See Adams*, 656 F.3d at 403-05 (prosecutor's false and misleading factual representations, based on allegedly improper motive, to court in obtaining *ex parte* order were entitled to absolute immunity); *Rippy*, 270 F.3d at 422-23 (under Tennessee law, social workers "act in much the same fashion as probation officers who make sentencing recommendations; [t]he function of making such recommendations, including the underlying investigation, is similarly intimately related to the judicial phase of the child custody proceedings. Social workers involved in the investigation or recommendation are, therefore, entitled to absolute immunity with respect to claims arising from such recommendations and investigations."). Thus, Mullins and Gant are entitled to absolute immunity in obtaining the order of attachment.

2. Removal of H.H.

*Quasi-Judicial Immunity*

The Defendants seek absolute quasi-judicial immunity for the retrieval of H.H. from Florida. In *Bush v. Rauch*, 38 F.3d 842 (6th Cir. 1994), upon which the Defendants rely, the Sixth Circuit held that a county probate administrator enjoyed such immunity in carrying out a court order that a juvenile be placed in a non-secure detention home. *Bush*, 38 F.3d at 844, 847. The court explained that "[q]uasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Id.* at 847. In determining whether immunity is appropriate, the court is to utilize a functional approach similar to that used for quasi-prosecutorial immunity, under which it "looks to the nature of the function performed, not the identity of the actor who performed it." *Id.* (internal quotation marks omitted). The *Bush* court articulated that "enforcing or executing a court order is intrinsically associated with a judicial proceeding," adding that

> officials must be permitted to rely upon a judge's findings and determinations to preserve the integrity of the court's authority and ability to function. It does not seem logical to grant immunity to a judge in making a judicial determination and then hold the official enforcing or relying on that determination liable for failing to question the judge's findings. This would result in the official second-guessing the judge who is primarily responsible for interpreting and applying the law.

*Id.* at 847-48. Quasi-judicial immunity has been extended to social workers. *See Rippy*, 270 F.3d at 422.

In response, Hope points to the Sixth Circuit's recent decision in *Kovacic*, in which the court found that "[w]hen the social workers removed the children from the home, they were acting in a police capacity rather than as legal advocates." *Kovacic*, 724 F.3d at 694. The Defendants attempt to distinguish this case from *Kovacic* on numerous grounds and argue that it did not overrule *Bush*.

*Qualified Immunity*

Even if the Court were to agree with the Plaintiff's assertion that absolute immunity does not apply, the Defendants are nonetheless protected by qualified immunity. "Qualified immunity shields [state actors] from [§] 1983 constitutional torts so long as the [actors] did not violate the clearly established constitutional rights of the claimant." *Krause v. Jones*, 765 F.3d 675, 678 (6th Cir. 2014). "Qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Benison v. Ross*, 765 F.3d 649, 664 (6th Cir. 2014) (internal quotation marks omitted), *reh'g & suggestion for reh'g en banc denied* (6th Cir. Nov. 13, 2014). If a defendant asserts qualified immunity, the plaintiff bears the burden of showing that (1) considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) that right was clearly established at the time of the

defendant's conduct. *Benison*, 765 F.3d at 664; *Bletz v.* Gribble, 641 F.3d 743, 750 (6th Cir. 2011). The court has discretion over which question to tackle first. *Range v. Douglas*, 763 F.3d 573, 587 (6th Cir. 2014).

In order for a right to be "clearly established," "the contours of the right must be sufficiently clear that a reasonable officer would understand that what [she] is doing violates that right." *Benison*, 765 F.3d at 664 (quoting *Bell v. Johnson*, 308 F.3d 594, 601-02 (6th Cir. 2002)). "[I]n light of preexisting law[,] the unlawfulness [of the act] must be apparent." *Andrews v. Hickman Cnty., Tenn.*, 700 F.3d 845, 853 (6th Cir. 2012). The issue of qualified immunity is essentially a legal question to be determined by the court. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009).

As noted above, the Plaintiff has brought constitutional claims under the Fourth and Fourteenth Amendments. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and [that] no Warrants shall issue, but upon probable cause . . . " U.S. Const. amend. IV. She cites to Tennessee Code Annotated § 37-1-113(b), which states in pertinent part that "[t]he taking of a child into custody is not an arrest, except for the purpose of determining its validity under . . . the Constitution of the United States," as well as a committee comment to Rule 11 of the Tennessee Rules of Juvenile Procedure providing that "[t]he same restrictions that apply to issuance of an arrest order in adult proceedings generally apply to the issuance of attachments in juvenile court proceedings." Hope argues that, as an attachment of a child in Tennessee is akin to the issuance of an arrest warrant which must be supported by probable cause, the Fourth Amendment was violated because no probable cause for H.H.'s seizure existed. The attachment at issue here was of a child already in DCS custody. The

Plaintiff has pointed to no caselaw clearly establishing that under these circumstances, a seizure in violation of the Fourth Amendment occurred. Because she has made no showing as to the clearly established element, Hope has failed to overcome qualified immunity on the Fourth Amendment claim.

The Court now turns to Plaintiff's allegations under the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment provides that "[no] State [shall] deprive any person of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. XIV, § 1. "Parents have a fundamental liberty interest in family integrity -- including the right to the care, custody and control of their children -- that is protected by the substantive and procedural due process guarantees of the Fourteenth Amendment." *Young v. Vega*, 574 F. App'x 684, 689-90 (6th Cir. 2014). This right is "neither absolute nor unqualified," and is "limited by an equally compelling governmental interest in the protection of children." *Id.* at 690 (quoting *Kottmyer v. Maas*, 436 F.3d 684, 690 (6th Cir. 2006)).

Substantive due process claims come in two flavors: (1) the "deprivation of a particular constitutional right" and (2) "conduct that shocks the conscience." *Id.* Under the former, "substantive due process provides that, irrespective of the constitutional sufficiency of the processes afforded, government may not deprive individuals of fundamental rights unless the action is necessary and animated by a compelling purpose." *Pittman*, 640 F.3d at 728-29 (quoting *Bartell v. Lohiser*, 215 F.3d 550, 557-58 (6th Cir. 2000)). With respect to the latter, "[c]onduct shocks the conscience if it violates the decencies of civilized conduct." *Range*, 763 F.3d at 589 (internal quotation marks omitted). "Such conduct includes actions so brutal and offensive that they do not comport with traditional ideas of fair play and decency." *Id.* at 589-90 (internal quotation marks omitted). Hope has alleged that her fundamental right to parent has

been violated and that the Defendants' conduct shocked the conscience. She has also averred that the opening of a new investigation by the Defendants violated her right to due process.

The Plaintiff's substantive due process claim based on her right to parent must fail. Because the juvenile court, and not Mullins or Gant, had the ultimate decisionmaking power as to the attachment of H.H., it alone could deprive Hope of her fundamental right. *See Pittman*, 640 F.3d at 729 (since juvenile court alone had the power with respect to placement and custody, only it could deprive plaintiff of his fundamental right to parent). As there was no violation of her substantive due process right to parent based on the Defendants' conduct, they are entitled to qualified immunity on that claim. *See id.*

Hope's claim that the acts of Mullins and Gant shocked the conscience fare no better. In asserting that their alleged fraud on the court violated the decencies of civilized conduct, she cites to *Holloway* and *Mitchell v. McNeil*, 487 F.3d 374 (6th Cir. 2007). Neither serve her purpose. Plaintiff points to *Holloway* for the proposition that the social worker's behavior therein amounted to a usurpation of the court's authority. *Holloway*, 220 F.3d at 777. The court stated, however, that, if the social worker's acts could be legitimated, "it would be through qualified immunity, not absolute immunity, and she has not claimed qualified immunity." *Id.* Here, of course, the Defendants have claimed qualified immunity. In referencing *Mitchell*, Hope argued that "[t]he Plaintiff has made a sufficient case that Mullins, by her statements and omissions, perpetrated a fraud on the court, which was exposed with little effort at a hearing, and this behavior, as stated in *Mitchell*, certainly shocks the conscience." (D.E. 14-1 at 14.) The cited case involved the death of a child who was struck by the personal automobile of a police officer while it was being driven by an informant. *Mitchell*, 487 F.3d at 375. *Mitchell* dealt with neither social workers nor representations to a court, but rather whether it shocked the conscience for

police to provide vehicles to informants with known histories of drug and alcohol use. *See id.* at 378. It provides no support for Hope's claim.

Plaintiff also avers that the following acts shocked the conscience: (1) H.H. was violently ripped from her, offering Hope no chance to speak to her, obtain an explanation or say goodbye; (2) the one phone contact between the girl and her mother once she was back in Tennessee was monitored by Defendants and was only seconds long; and (3) Hope was then denied all phone contact with her daughter for five days. However, the Plaintiff has made no effort, beyond bald assertion, to demonstrate that these actions constituted a substantive due process claim. The burden of making this showing lies with the Plaintiff. *See Andrews*, 700 F.3d at 853. As she has not, the Court finds that Mullins and Gant are protected by qualified immunity. *See Brent v. Wenk*, 555 F. App'x 519, 530 (6th Cir. 2014) (plaintiff's failure to present caselaw showing that defendants' actions violated clearly established law resulted in ruling that qualified immunity was appropriate), *cert. denied*, 2014 WL 3055736 (U.S. Nov. 17, 2014) (No. 14-5078).

"Procedural due process principles protect persons from deficient procedures that lead to the deprivation of cognizable liberty interests." *Pittman*, 640 F.3d at 729 (quoting *Bartell*, 215 F.3d at 557). To demonstrate a violation of procedural due process rights, a plaintiff must show "(1) that [s]he was deprived of a protected liberty or property interest, and (2) that such deprivation occurred without the requisite due process of law." *Id.* (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 296 (6th Cir. 2006)). "Due process requires that when a State seeks to terminate a protected interest, it must afford notice and opportunity for hearing appropriate to the nature of the case before the termination becomes effective." *Id.* (quoting *Bell v. Burson*, 402 U.S. 535, 542 (1971)) (internal alterations &

quotation marks omitted). With respect to a temporary deprivation of physical custody of a child, the constitution demands a hearing within a reasonable time. *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 636 (6th Cir. 2007).

Plaintiff bases her procedural due process claim on Defendants' alleged failure to comply with Tennessee Code Annotated § 37-1-131(e)(2). No such statutory provision exists, however. The Court assumes Hope meant to cite to § 37-1-130(e)(2), which provides that

> [i]f . . . the department determines that the trial home visit is not in the child's best interest and removes the child on an emergency basis or seeks to remove the child on a non-emergency basis, the department shall file a motion for review by the court of the trial home visit and shall provide notice to the parent(s), guardian or other custodian. The court shall hold a hearing on such motion within three (3) days of an emergency removal and shall set a hearing within fifteen (15) days to be held at the earliest possible date if the motion seeks the court's permission to make a non-emergency removal.

Tenn. Code Ann. § 37-1-130(e)(2). Hope also refers the Court to Rule 5(d) of the Tennessee Rules of Juvenile Procedure, which states that

> [w]hen a child is taken into custody upon an allegation that the child is dependent and neglected or abused, the person taking the child into custody shall bring the child before the court or deliver the child to a shelter care facility designated by the court or to a medical facility if the child is believed to suffer from a serious physical condition or illness which requires prompt treatment. The person shall give notice thereof, together with a reason for taking the child into custody, to the parents, guardian, or other custodian and to the court. Notice shall also immediately be given to the Department of Children's Services.
>
> As soon as practicable, notice shall also be given to the parents, guardian, or other custodian . . . of their right to a preliminary hearing . . .; of the time, date, and place of the hearing; and of the factual circumstances necessitating the removal.

Tenn. R. Juv. Proc. 5(d)(3).[4] However, "it is well-settled that state law does not ordinarily define the parameters of due process for Fourteenth Amendment purposes, and that state law, by itself,

---

[4] It is unclear whether this provision applies to children, such as H.H., who are already in DCS custody.

15

cannot be the basis for a federal constitutional violation." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004); *see also Occupy Nashville v. Haslam*, 769 F.3d 434, 444 n.19 (6th Cir. 2014) ("noncompliance with state laws and administrative procedures does not state a claim under § 1983"); *Xiques v. Knight*, 25 F. App'x 251, 252-53 (6th Cir. 2001) (reversing district court denial of qualified immunity on grounds defendant may have violated a state statute; court held that federal defense of qualified immunity "may be overcome only by clearly established *federal* law, not state law"). Since Hope has offered no other basis for her procedural due process claim, she has failed to bear her burden of overcoming qualified immunity.

Dismissal of Opening of New Investigation Claim.

In seeking dismissal of Plaintiff's claim that the opening of a new investigation, presumably by filing the motion for review, violated her due process rights, the Defendants contend that the substantive due process right to family integrity does not include a constitutional right to be free from investigations by children's services agencies. *See Kottmyer*, 436 F.3d at 691 ("Mere investigation by authorities into child abuse allegations without more . . . does not infringe upon a parent's right to custody or control of a child"). The Sixth Circuit recognized in *Kottmyer*, however, that a due process claim may be actionable "if there is evidence that the investigation was undertaken in bad faith or with a malicious motive or if tactics used to investigate would 'shock the conscience.'" *Id.* at n.1; *see also Kolley v. Adult Protective Servs.*, 725 F.3d 581, 585 (6th Cir. 2013). While Hope asserts that such evidence is present here, her claim cannot succeed because, as noted above, the juvenile court, not the Defendants, was the final decisionmaker in the deprivation of her rights. *See Kolley,* 725 F.3d at 585-86 (despite alleged misrepresentations by a social worker made in petitioning the probate court for an *ex parte* order when no emergency existed and failure to notify parent of court hearings, under

*Pittman*, the alleged deprivation was perpetrated by the juvenile court as final decisionmaker regarding custody; thus, Kolley had no substantive due process claim against the social worker.) The claim is DISMISSED.

State Law Claims.

In a civil action in which the court has original jurisdiction, it "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). The court may decline to exercise that jurisdiction when it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007). The Sixth Circuit applies a "strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed -- retaining residual jurisdiction only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh [its] concern over needlessly deciding state law issues." *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011) (some internal quotation marks omitted). Here, the Plaintiff's federal claims have been dismissed, and the Court finds no basis upon which to retain jurisdiction over any surviving state law claims.[5] They are, therefore, DISMISSED without prejudice.

*CONCLUSION*

For the reasons set forth herein, the Defendants' motion to dismiss is GRANTED as to

---

[5] It is somewhat unclear to the Court whether the Defendants intended to seek dismissal of Hope's state law claims on immunity grounds. The Court has assumed for purposes of this discussion that they survived dismissal of the § 1983 claim.

the Plaintiff's federal claims.   Hope's claims under state law are DISMISSED without prejudice.

IT IS SO ORDERED this 15th day of December 2014.

s/ J. DANIEL BREEN<br>CHIEF UNITED STATES DISTRICT JUDGE